UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELISSA SIMS,
Plaintiff,

v. Case No.:

PIERRE RICHARD A. JEAN, individually; And KEVIN RAMBOSK, in his official capacity as Sheriff of Collier County, Florida,
Defendants.
_______________________________/

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**
**DEMAND FOR JURY TRIAL**

Plaintiff, MELISSA SIMS ("Plaintiff"), by and through undersigned counsel, brings this action against Defendants PIERRE RICHARD A. JEAN ("JEAN") and KEVIN RAMBOSK, in his official capacity as Sheriff of Collier County, Florida ("SHERIFF"), and alleges as follows:

## INTRODUCTION

This action arises from Plaintiff's arrest and prosecution for a text message she did not send. Detective Jean attributed an unauthenticated screenshot to Plaintiff and asserted that he had observed a criminal violation without examining the receiving telephone, obtaining a forensic extraction, or verifying transmission through carrier records. Earlier that same day, another deputy investigated a separate accusation by the same complaining witness and found insufficient probable cause to arrest Plaintiff. Carrier records Plaintiff later obtained contradict the screenshot's depiction of an SMS communication.

Plaintiff was arrested on January 21, 2025, and endured eight months of criminal proceedings before the State dismissed the charge on September 22, 2025. Detective Jean's knowing or reckless misrepresentations procured criminal process, deprived Plaintiff of her constitutional rights, and caused substantial personal, professional, financial, and emotional harm.

## I. JURISDICTION AND VENUE

1. This is a civil action arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.
2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
3. Plaintiff seeks damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief as this Court determines appropriate.
4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Collier County, Florida.

## II. PARTIES

5. Plaintiff MELISSA SIMS is an adult individual who, at all material times, resided in Collier County, Florida.
6. Defendant PIERRE RICHARD A. JEAN was, at all material times, a law-enforcement officer employed by the Collier County Sheriff's Office.

7. Defendant JEAN acted under color of state law in investigating the allegations against Plaintiff and preparing or transmitting investigative materials for criminal prosecution.
8. Defendant JEAN is sued in his individual capacity for his personal participation in the alleged constitutional violations.
9. Defendant KEVIN RAMBOSK is the Sheriff of Collier County, Florida, and is sued in his official capacity.
10. The official-capacity claim against the SHERIFF is a claim against the governmental entity represented by that office.

## III. FACTUAL ALLEGATIONS

### A. The Underlying Criminal Proceedings and No-Contact Order

11. On or about November 24, 2024, Plaintiff became subject to a pretrial no-contact order arising from a separate domestic-violence criminal proceeding involving Eric Sims.
12. Plaintiff understood that the order restricted prohibited contact with Eric Sims.
13. Plaintiff denies knowingly or willfully violating the order through the December 25, 2024 electronic communication that later became the basis for her arrest.
14. The separate underlying criminal case ultimately proceeded to trial.
15. On December 2, 2025, a jury acquitted Plaintiff in that underlying proceeding.
16. The acquittal occurred after the September 22, 2025 dismissal of the separate charge arising from the alleged December 25 text message.

**B. The December 25, 2024 Pickleball Encounter and Initial Investigation**

17. On December 25, 2024, Plaintiff was playing pickleball at East Naples Community Park in Naples, Florida.
18. Plaintiff had been playing for several hours with the same three male players.
19. During that period, Eric Sims arrived at the facility and began playing on a nearby court, notwithstanding the availability of other courts.
20. Eric Sims played approximately one game before leaving the area.
21. Shortly thereafter, deputies from the Collier County Sheriff's Office responded to an allegation that Plaintiff had violated the conditions of her pretrial release by being in proximity to Eric Sims.
22. Deputy Michael Pasztor investigated the reported encounter.
23. Deputy Pasztor interviewed Plaintiff and obtained information from the pickleball players who had been with her.
24. The responding deputy documented that witnesses corroborated Plaintiff's account of the relevant events and indicated that she had not interacted with anyone outside their game.
25. Following his investigation, Deputy Pasztor determined that there was insufficient probable cause to arrest Plaintiff in connection with the reported pickleball-court encounter.
26. Deputy Pasztor's investigation demonstrates that the Sheriff's Office possessed the ability to interview available witnesses, assess conflicting accounts, and decline an arrest when the evidence did not establish probable cause.

27. Plaintiff does not contend that Deputy Pasztor's conclusion concerning the physical encounter automatically resolved the separate electronic allegation.

28. Rather, Plaintiff alleges that the earlier investigation provides relevant context concerning the circumstances in which the subsequent accusation arose.

**C. The Separate Allegation Concerning a December 25, 2024 Text Message**

29. Later on December 25, 2024, a separate allegation arose concerning a text message purportedly transmitted by Plaintiff to Eric Sims.

30. The alleged communication stated:

"Haha you asshole! The cops won't arrest a woman on Xmas but nice try you piece of shit!"

31. Plaintiff unequivocally denies authoring or transmitting that communication.

32. The allegation was supported by screenshots supplied by Eric Sims.

33. One screenshot depicts an iPhone message-list entry dated December 25, 2024, associated with a contact identified as "Melissa Sims PB Wife."

34. Another screenshot depicts a message appearing in an iPhone conversation with a contact identified as "Melissa."

35. The displayed communication is expressly labeled "Text Message • SMS."

36. The screenshot displays the purported message at approximately 3:42 p.m.

37. The screenshots contain a contact name and photograph associated with Plaintiff.

38. A contact name, photograph, and displayed message do not independently establish the identity of the person who authored or transmitted the communication.

39. Nor do screenshots, standing alone, establish the originating telephone, subscriber account, transmission pathway, or authenticity of the underlying electronic communication.

40. Plaintiff alleges that the screenshots were not independently authenticated before the criminal process resulting in her arrest was initiated.

**D. Detective Jean's Investigation and Characterization of the Evidence**

41. Defendant JEAN investigated the allegation that Plaintiff had violated the no-contact order by sending the purported December 25, 2024 text message.

42. During that investigation, Defendant JEAN received screenshots supplied by Eric Sims.

43. Defendant JEAN did not personally witness Plaintiff compose, send, or transmit the alleged communication.

44. Defendant JEAN did not examine Eric Sims's actual telephone to determine whether the purported communication existed in its native messaging environment.

45. Defendant JEAN did not obtain a forensic extraction of the receiving device.

46. Defendant JEAN did not independently establish through telecommunications records that the alleged SMS communication originated from Plaintiff's telephone account.

47. Nevertheless, Defendant JEAN characterized the electronic evidence in his investigative supplement as:

“Text message sent from the suspect's phone to the victims.”

48. That description affirmatively characterized the alleged communication as originating from the suspect's telephone.

49. Defendant JEAN had not independently verified that attribution through examination of the underlying device, native message data, or carrier records.

50. Defendant JEAN further stated in his investigative supplement:

“Due to observing the violation made by Melissa, a warrant request will be completed with established probable cause for Melissa's arrest.”

51. Defendant JEAN had not personally observed Plaintiff transmit the alleged communication.

52. The conduct Defendant JEAN described as an observed violation was instead an alleged electronic communication depicted in screenshots supplied by the complaining witness.

53. Defendant JEAN documented that a copy of the alleged text message was placed onto a CD and submitted into evidence.

54. Placing an image onto a CD did not independently establish the authenticity, source, or transmission of the message depicted in that image.

55. Plaintiff alleges that Defendant JEAN's investigative narrative presented the allegation with a degree of factual certainty unsupported by the verification methods documented in his report.

56. Plaintiff further alleges that Defendant JEAN knowingly or recklessly failed to distinguish between a screenshot depicting an alleged message and independently verified evidence that Plaintiff transmitted that message.

57. Plaintiff alleges that these representations and omissions created a materially misleading impression concerning the evidentiary basis for attributing the alleged communication to her.

58. Plaintiff alleges that the misleading characterization materially contributed to the procurement of criminal process resulting in her arrest.

**E. The Sworn Witness Statement and Submission for Prosecution**

59. The investigative materials produced to Plaintiff included a sworn witness statement concerning the December 25, 2024 pickleball-court encounter.

60. That statement concerned the complaining witness's account of the physical encounter at East Naples Community Park.

61. The statement did not independently establish that Plaintiff composed or transmitted the separate electronic communication.

62. The statement did not identify a forensic examination, telecommunications records, or independent technical evidence authenticating the alleged text message.

63. The capias submission included a checklist identifying potential supporting documents.

64. The box corresponding to an affidavit for a criminal offense was not checked.

65. The materials produced to Plaintiff do not identify a separate sworn law-enforcement probable-cause affidavit authenticating the alleged electronic communication.

66. Defendant JEAN's investigative narrative was electronically certified as accurate to the reporting officer's knowledge.

67. The materials presently available do not establish whether Defendant JEAN separately swore to the electronic allegations before a judicial officer.

68. Plaintiff does not allege that the absence of a separately identified affidavit, standing alone, rendered the criminal process unconstitutional.

69. Instead, Plaintiff alleges that the investigative submission materially overstated the evidentiary foundation for attributing the alleged communication to her.

70. Plaintiff further alleges that the submission failed to adequately distinguish the complaining witness's accusation from independently verified evidence of transmission.

71. To the extent Defendant JEAN's material representations or omissions were incorporated into the probable-cause submission presented to the judicial officer, Plaintiff alleges that they improperly influenced the resulting determination.

**F. The Criminal Charge, Capias, and Arrest**

72. On or about January 16, 2025, the State Attorney's Office executed an Information charging Plaintiff with a violation of a domestic-violence-related no-contact restriction.

73. The Information was filed on or about January 17, 2025.

74. The original Information identified the alleged offense date as January 25, 2025.

75. That date was subsequent to Plaintiff's January 21, 2025 arrest.

76. The State subsequently amended the Information.

77. The original Information and the capias also contained differing statutory subsection references.

78. Plaintiff alleges that these discrepancies are relevant to the accuracy and preparation of the criminal charging materials.

79. Plaintiff does not contend that a clerical discrepancy, standing alone, necessarily invalidated the arrest.

80. On January 21, 2025, Plaintiff was arrested in Collier County in connection with the alleged December 25, 2024 electronic communication.

81. The arrest was carried out pursuant to criminal process issued in connection with the prosecution.

82. Plaintiff was taken into custody and subjected to the ordinary restraints, humiliation, and consequences of criminal arrest.

83. The initial arrest documentation reflected a bond amount of $500.

84. Plaintiff subsequently experienced an increase in the bond amount.

85. The precise amount of the increased bond remains subject to confirmation through the bonding agency and related records.

86. Plaintiff incurred expenses associated with securing her release from custody.

87. Plaintiff alleges that her arrest would not have occurred absent the materially misleading representations and omissions concerning the purported electronic communication.

**G. The Telecommunications Records Contradicting the Alleged SMS**

88. Following her arrest, Plaintiff obtained telecommunications records concerning the alleged December 25, 2024 communication.

89. The screenshot supplied in support of the criminal allegation expressly depicted the communication as an SMS text message.
90. The screenshot displayed a transmission time of approximately 3:42 p.m.
91. Plaintiff obtained certified telecommunications records associated with her telephone account.
92. According to Plaintiff, those records do not identify an outgoing SMS or MMS communication to the telephone number attributed to Eric Sims at the alleged time.
93. Plaintiff also obtained telecommunications records associated with Eric Sims's carrier.
94. According to Plaintiff, those records do not identify a corresponding incoming SMS or MMS communication from Plaintiff's telephone number at the alleged time.
95. Plaintiff alleges that the absence of corresponding transmission and receipt records materially contradicts the representation that the depicted SMS was transmitted between the identified telephone accounts through the carrier services reflected in those records.
96. The absence of a carrier entry must be evaluated in light of the records' scope, completeness, and the technical limitations of carrier reporting.
97. Nevertheless, Plaintiff alleges that the records provide substantial evidence contradicting the particular SMS communication depicted in the screenshots.
98. Plaintiff provided the telecommunications records to her criminal defense counsel following her release from custody.

99. Plaintiff further alleges that those records were subsequently disclosed to the State Attorney's Office.

100. The prosecution continued for several additional months.

101. Plaintiff does not presently allege that Defendant JEAN possessed the subsequently obtained carrier records before the January 21, 2025 arrest.

102. Plaintiff's constitutional claim concerning the procurement of criminal process is based upon what Defendant JEAN knew, represented, or recklessly disregarded when the process was sought.

**H. Termination of the Criminal Proceedings**

103. On September 22, 2025, the State Attorney's Office entered a nolle prosequi concerning the charge arising from the alleged December 25, 2024 communication.

104. The criminal proceeding therefore terminated without a conviction.

105. Plaintiff had been subjected to criminal proceedings for approximately eight months.

106. The dismissal did not restore the financial resources, professional opportunities, personal stability, or emotional well-being Plaintiff alleges she lost during the prosecution.

107. Plaintiff continues to deny sending the alleged communication.

**I. The Separate December 15, 2024 Group-Message Activity**

108. During a subsequent internal investigation, the Collier County Sheriff's Office reviewed telecommunications activity dated December 15, 2024.

109. That activity was separate from the alleged December 25, 2024 message used to support Plaintiff's arrest.

110. The December 15 records reflected repeated, same-minute transmissions involving approximately eleven telephone numbers.

111. Plaintiff identified the numbers as participants in an existing pickleball group-message conversation.

112. Plaintiff maintains that she responded within the existing group conversation rather than initiating a separate, private conversation with Eric Sims.

113. Plaintiff further maintains that Eric Sims was blocked on her iPhone during the relevant period.

114. On September 7, 2026, Lieutenant Wade Williams advised Plaintiff that, in his view, the December 15 activity constituted a violation of the no-contact order notwithstanding the group-message context.

115. Plaintiff disputes that the carrier activity, without further examination of the circumstances, establishes a knowing or willful violation.

116. Plaintiff recognizes that participation in a group conversation does not automatically exempt a communication from an otherwise applicable no-contact order.

117. Regardless of the proper legal characterization of the December 15 activity, those records concern a separate date and do not independently authenticate the alleged December 25 communication.

118. The December 15 activity does not establish that Plaintiff authored or transmitted the specific SMS depicted in the screenshots used to initiate the January 2025 prosecution.

**J. The Professional Responsibility Investigation**

119. In 2026, Plaintiff submitted complaints concerning Defendant JEAN's investigation and related conduct by the Collier County Sheriff's Office.

120. The Sheriff's Office opened administrative matters concerning Plaintiff's allegations.

121. During the review, Lieutenant Wade Williams confirmed that Defendant JEAN had relied upon screenshots supplied by Eric Sims rather than a forensic examination of the underlying telephone.

122. In his September 7, 2026 correspondence, Lieutenant Williams acknowledged that the State Attorney's Office understood the screenshots were not derived from a forensic report.

123. Lieutenant Williams nevertheless defended the investigation and maintained that probable cause existed.

124. Lieutenant Williams also maintained that the State Attorney's Office and a judge had approved the arrest process.

125. Plaintiff disputes the sufficiency and accuracy of the investigative presentation underlying that process.

126. Plaintiff alleges that Lieutenant Williams raised the prospect of a further arrest concerning the separate December 15, 2024 communications.

127. Plaintiff further alleges that those statements caused her to fear renewed criminal proceedings and influenced her handling of the administrative complaint.

128. Lieutenant Williams subsequently advised Plaintiff that the internal investigation would be closed based upon what he characterized as her request to withdraw the complaint.

129. Plaintiff maintains that her withdrawal or contemplated withdrawal occurred in circumstances she experienced as coercive.

130. Plaintiff alleges that the administrative review failed to adequately address her central concern: whether the investigating detective accurately represented the source and evidentiary foundation of the purported December 25 SMS.

**K. The Public Display of Plaintiff's Arrest Information**

131. Following the dismissal of the criminal charge, Plaintiff sought removal or correction of her booking photograph and arrest information from the Sheriff's Office's public-facing website.

132. Plaintiff advised the Sheriff's Office that the Florida Department of Law Enforcement had automatically sealed the associated criminal-history record.

133. Plaintiff also advised that the related court record had been made confidential.

134. The Sheriff's Office initially maintained that its locally held law-enforcement records were not automatically subject to the same sealing requirements.

135. Plaintiff distinguished the Sheriff's Office's retention of internal records from its discretionary publication of booking information on a publicly searchable website.

136. On September 1, 2026, Commander Michael Williams advised Plaintiff that a decision had been made to remove her photograph and booking report from the Sheriff's Office website.

137. Plaintiff subsequently confirmed that her photograph had been removed.

138. Plaintiff nevertheless reported that the public-facing booking entry and certain personal information remained accessible.

139. Plaintiff alleges that the continued publication of her arrest information after dismissal contributed to her reputational and emotional injuries.

140. Plaintiff does not allege that the automatic sealing of FDLE records, standing alone, necessarily required the Sheriff's Office to seal its independently maintained records.

**L. Plaintiff's Subsequent Request for an Investigation**

141. Following her December 2, 2025 jury acquittal in the separate underlying criminal proceeding, Plaintiff personally visited the State Attorney's Office.

142. Plaintiff requested an investigation into conduct she attributed to Eric Sims, including allegations and evidence that had resulted in criminal proceedings against her.

143. An investigator advised Plaintiff that she would need to contact the Collier County Sheriff's Office to initiate an investigation.

144. Plaintiff subsequently contacted the Sheriff's Office, and a deputy responded to her residence.

145. During their discussion, Plaintiff alleges that the deputy discouraged her from pursuing an investigation.

146. According to Plaintiff, the deputy indicated that an investigation might uncover information that could negatively affect her or future litigation involving Eric Sims or other persons.

147. Plaintiff further alleges that the deputy made comments suggesting that she was a “pretty girl,” would find someone else, and should leave the matter alone.

148. Plaintiff found those statements dismissive and troubling.

149. Plaintiff alleges that she had sought an investigation into conduct she believed was criminal and instead encountered discouragement from the responding deputy.

150. The deputy's identity has not yet been established.

151. Plaintiff does not presently allege that the deputy participated in Defendant JEAN's original investigation or possessed personal knowledge of the circumstances surrounding the January 2025 arrest.

152. Plaintiff identifies this subsequent interaction as relevant background concerning her efforts to obtain review of the events and the emotional consequences of those efforts.

**M. Plaintiff's Damages**

153. As a direct and foreseeable consequence of the alleged constitutional violations, Plaintiff suffered a deprivation of liberty through her arrest and detention.

154. Plaintiff incurred expenses associated with obtaining release from custody.

155. Plaintiff incurred substantial legal expenses defending the criminal prosecution.

156. Plaintiff alleges that the prosecution interfered with her employment, earning capacity, and professional opportunities.

157. Plaintiff alleges that she experienced substantial disruption to her living arrangements and personal relationships.

158. Plaintiff suffered emotional distress, humiliation, anxiety, and reputational injury.

159. Plaintiff further alleges that the events necessitated mental-health treatment and contributed to continuing psychological distress.

160. Plaintiff seeks compensation for all legally recoverable injuries proximately caused by Defendants' actionable conduct.

## IV. CLAIMS FOR RELIEF

### COUNT I — FOURTH AMENDMENT UNREASONABLE SEIZURE PURSUANT TO LEGAL PROCESS 42 U.S.C. § 1983 — AGAINST DEFENDANT JEAN, INDIVIDUALLY

161. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

162. The Fourth Amendment protects individuals against unreasonable seizures.

163. A seizure pursuant to legal process may violate the Fourth Amendment when the process is constitutionally defective because of material false statements or omissions made knowingly or with reckless disregard for the truth.

164. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established the constitutional significance of knowingly or recklessly false material statements in a warrant application.

165. The Eleventh Circuit has recognized that material misrepresentations and omissions may undermine probable cause when the corrected evidentiary presentation would not support the challenged process. *Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019).

166. Defendant JEAN acted under color of state law when investigating Plaintiff and preparing or transmitting materials used to initiate the criminal process.

167. Defendant JEAN affirmatively characterized the purported electronic communication as a message sent from Plaintiff's telephone.

168. Defendant JEAN further represented that he had observed the violation.

169. Plaintiff alleges that Defendant JEAN knew he had not personally observed the alleged transmission and had not independently verified its origin.

170. Plaintiff alleges that Defendant JEAN knowingly or recklessly presented the complaining witness's screenshot as establishing facts concerning authorship and transmission that had not been independently established.

171. Plaintiff further alleges that Defendant JEAN failed to adequately disclose material limitations in the evidence supporting the allegation.

172. Plaintiff alleges that the challenged representations and omissions were material to the probable-cause determination.

173. Plaintiff alleges that, had the information been accurately presented and any material omissions corrected, the resulting criminal process would not have been supported by probable cause.

174. Plaintiff was arrested and detained pursuant to the challenged process.

175. Defendant JEAN's alleged conduct was a legal and proximate cause of Plaintiff's resulting injuries.

176. As a consequence, Plaintiff suffered damages for which Defendant JEAN is liable under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff demands judgment against Defendant JEAN for compensatory damages, punitive damages to the extent permitted by law, reasonable attorney's fees, costs, interest where authorized, and all further appropriate relief.

## COUNT II — FOURTH AMENDMENT MALICIOUS PROSECUTION 42 U.S.C. § 1983 — AGAINST DEFENDANT JEAN, INDIVIDUALLY

177. Plaintiff realleges and incorporates the factual allegations above as though fully set forth herein.

178. The Fourth Amendment prohibits unreasonable seizures arising from criminal proceedings initiated or continued through constitutionally defective legal process.

179. In *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), the Eleventh Circuit addressed the elements of a Fourth Amendment malicious-prosecution claim under § 1983.

180. In *Thompson v. Clark*, 596 U.S. 36 (2022), the Supreme Court held that a plaintiff asserting a Fourth Amendment malicious-prosecution claim need only show that the prosecution ended without a conviction to satisfy the favorable-termination requirement.

181. Defendant JEAN participated in initiating the criminal proceedings against Plaintiff by investigating the electronic allegation and submitting the resulting investigative materials for prosecution.

182. Plaintiff alleges that Defendant JEAN knowingly or recklessly made materially misleading representations or omissions concerning the alleged electronic communication.

183. Plaintiff further alleges that those representations and omissions materially influenced the criminal process leading to her arrest and detention.

184. Plaintiff was seized pursuant to that process.

185. The criminal proceeding terminated on September 22, 2025, when the State Attorney's Office entered a nolle prosequi.

186. The proceeding terminated without a conviction.

187. Plaintiff alleges that the seizure was constitutionally unreasonable because the legal process was materially defective.

188. Plaintiff suffered substantial damages as a direct and proximate result.

189. This count is pleaded in the alternative to Count I to the extent the Court determines that the asserted theories describe the same constitutional injury.

190. Plaintiff does not seek duplicative recovery for the same injury.

**WHEREFORE**, Plaintiff demands judgment against Defendant JEAN for compensatory damages, punitive damages to the extent permitted by law, reasonable attorney's fees, costs, and all further appropriate relief.

## COUNT III — MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL POLICY OR CUSTOM
## 42 U.S.C. § 1983 — AGAINST DEFENDANT RAMBOSK IN HIS OFFICIAL CAPACITY

191. Plaintiff realleges and incorporates the preceding factual allegations as though fully set forth herein.

192. A governmental entity may be liable under § 1983 when an official policy, widespread custom, or decision attributable to an authorized final policymaker causes a constitutional deprivation.

193. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal liability cannot rest solely upon respondeat superior.

194. Plaintiff alleges that Defendant JEAN's investigation was conducted within the operational structure, procedures, and supervisory authority of the Collier County Sheriff's Office.

195. Plaintiff further alleges that the Sheriff's Office maintained procedures concerning the submission of domestic-violence-related allegations for prosecutorial review.

196. During the subsequent administrative investigation, Lieutenant Williams represented that departmental procedures required qualifying domestic-violence-related cases to be submitted to the State Attorney's Office.

197. Plaintiff alleges that the Sheriff's Office's handling of her complaint raises substantial concerns concerning its procedures for distinguishing unverified electronic accusations from independently authenticated electronic evidence.

198. Plaintiff further alleges that the administrative response raises concerns concerning the supervision and review of investigative representations made in connection with requests for criminal process.

199. Plaintiff alleges, upon information and belief, that an official policy, widespread custom, or deliberately indifferent failure to train or supervise concerning materially misleading electronic-evidence presentations caused or contributed to the constitutional violation alleged herein.

200. Plaintiff seeks discovery concerning the Sheriff's Office's written investigative procedures, training materials, supervisory-review practices, prior comparable incidents, and the authority of relevant policymakers.

201. Plaintiff alleges that the challenged institutional conduct was a moving force behind the deprivation of her Fourth Amendment rights.

**WHEREFORE**, Plaintiff demands judgment against Defendant RAMBOSK in his official capacity for compensatory damages to the extent authorized by law, reasonable attorney's fees, costs, and all further appropriate relief.

## V. DECLARATORY RELIEF

202. Plaintiff incorporates the preceding allegations.

203. Plaintiff seeks a declaration concerning the constitutionality of the challenged conduct to the extent an actual, continuing controversy exists and declaratory relief is otherwise authorized.

204. Plaintiff recognizes that declaratory relief is not available merely to obtain a retrospective declaration that completed past conduct was unlawful.

205. Plaintiff requests only such prospective declaratory relief as may be supported by the evidence and established requirements for standing.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a matter of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MELISSA SIMS respectfully requests that this Court enter judgment in her favor and against the appropriate Defendants and award:

A. Compensatory damages in an amount to be determined by the jury;

B. Damages for emotional distress, humiliation, loss of liberty, reputational harm, and other legally recoverable injuries;

C. Economic damages, including recoverable lost earnings and expenses proximately caused by the constitutional violations;

D. Punitive damages against Defendant JEAN in his individual capacity, to the extent permitted by law;

E. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

F. Taxable costs of litigation;

G. Appropriate declaratory relief, if supported by a continuing justiciable controversy;

H. Prejudgment and postjudgment interest to the extent authorized by law; and

I. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 15th day of October 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*